Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
PAUL SAPAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PAUL SAPAN,<br><br>          Plaintiff,<br>     vs.<br><br>LIFEWATCH, INC., a New York Corporation, also d/b/a LIFEWATCH USA,<br><br>          Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br>**Trespass to Chattel**<br>**Unfair Business Practices** |

COMES NOW Plaintiff PAUL SAPAN (hereinafter referred to as "Plaintiff") who alleges as follows:

/ / /

/ / /

- 1 -
Complaint

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff is, and at all times herein mentioned was, a resident of the County of Los Angeles, but has recently moved to the County of Orange, State of California.

2. Defendant LIFEWATCH, INC. d/b/a LIFEWATCH USA ("LIFEWATCH USA" or "Defendant") is, and at all times herein mentioned was, a corporation, doing business in the County of Orange, State of California.

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq.  The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012).  The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

/ / /

## FACTUAL SUMMARY

5. Defendants made nine (9) live calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch legal services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- October 19, 2013 at 9:36am,  CID 212-439-1918
- July 14, 2014 at10:07am,  CID 773-775-6487
- July 14, 2014 at10:13am,  CID 773-775-6487
- July 14, 2014 at10:27am,  CID 518-636-6762
- July 16, 2014 at 9:25am,  CID 773-775-6487
- July 16, 2014 at 10:17am,  CID 773-775-6487
- August 6, 2014 at 2:05 pm,  CID 773-775-6487
- August 14, 2014 at 10:50 am,  CID 773-775-6487
- October 27, 2014 at 2:12pm,  CID 773-775-6487

6. The first call is time-barred, but the other eight calls remain actionable.

7. Mr. Sapan's home phone has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission from August 9, 2008 to the present.

8. While each of the calls complained of above used the Caller ID number, they did not transmit Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

9. On October 19, 2013 at 9:36am the Defendant called Mr. Sapan's home telephone and Defendant's sales representative introduced himself as "Tom with LIFEWATCH USA" and proceeded to try to sell medical alert services.

10. Mr. Sapan inquired after the company's information and "Tom" told him the company's website was "www.lifewatchusa.com".

11. Shortly thereafter the call was dropped or disconnected for some unknown reason.

12. This first call is time-barred and not actionable and is detailed only as evidence linking Defendants to all the calls herein, all the following calls are actionable.

13. On July 14, 2014 at 10:07am the Defendant called Mr. Sapan's home telephone and Defendant's representative identified himself as "Jack Stevens" even though he had a heavy Indian accent and said he was with an unintelligible medical alert company.

14. The Indian accented "Jack Stevens" said he was offering a free medical alert system, but failed to mention the monitoring service costs money and Mr. Sapan trying to figure out who was calling played along but when Mr. "Stevens" tried to "transfer you to my supervisor", the call got dropped or disconnected. The next call fully identified the calling party.

15. A few moments on July 14, 2014 at 10:13am the Defendant called again this time with a non-Indian accented representative identifying himself as "Daniel".

16. Mr. Sapan, still trying to figure out who was calling him illegally, asked for the company name and was now told it was "Medical Alert Company" and the website was "medicalalert.com", after which Mr. Sapan said he would check it out and instructed "Daniel" that he would call them back if we was interested, was given a callback number of 518-636-6762, and hung up.

17. Mr. Sapan immediately called the callback number to determine if it was fake or not and it was in fact picked up by someone who did not identify himself the business name and upon Mr. Sapan complaining of the telemarketing intrusion, claimed they did not make outbound calls.

18. Mr. Sapan called the callback number again since the company identification was vague at best and was connected to "Daniel" again and "Daniel" after being told that the unnamed representative denied outbound calling, apologized and said Mr. Sapan had reached "LIFEWATCH USA" and that the website was "www.lifewatch-usa.com". Finally having the identification, Mr. Sapan hung up.

19. A few moments later, on July 14, 2014 at 10:27am, the Defendant's representative "Daniel" called again saying the previous call had been

disconnected, but Mr. Sapan corrected him saying he had hung up and firmly instructed them not to call him again.

20. A couple days later, on July 16, 2014 at 9:25am the Defendant called Mr. Sapan again using the same CID number as in the previous calls, and this time the representative said he was "Chris" from the same vague "Medical Alert Company" which Mr. Sapan had already identified as Defendant trying to sell the same medical alert monitoring service. Mr. Sapan hung up.

21. About an hour later on July 16, 2014 at 10:17am the Defendant called Mr. Sapan again using the same CID number, but Mr. Sapan was busy and did not pick up.

22. On August 6, 2014 the Defendant called Mr. Sapan again using the same CID number as in the previous calls, and this time the representative said he was "Anthony" again from the vague sounding "Medical Alert" trying to give away a free device and sell the monitoring service again. The call was dropped.

23. Defendant called Mr. Sapan two more times on August 14, 2014 at 10:50am and October 27, 2014 at 2:12pm using the same CID number as in the previous calls, but Mr. Sapan was busy and did not answer those calls.

24. For the calls Mr. Sapan did not answer he alleges on information and belief that that these calls were made by Defendants for the same telemarketing purpose as in all the calls he answered, which all used the exact same CID number.

## Liability of LifeWatch, Inc., d/b/a LifeWatch USA

25. During the calls Mr. Sapan answered or the calls he made to the callback number given, the Defendant's representatives consistently ultimately admitted they were with "Lifewatch USA" and gave the same consistent website address of "www.lifewatch-usa.com".

26. At the outset of some of the calls the Defendant's representatives sometimes used vague anonymous sounding names like "Medical Alert Company", however Mr. Sapan is familiar with the format of junk telemarketing calls and knows that cold callers often use a false and generic sounding business name to evade TCPA liability before assessing the target's interest and only then say the company's real name, which is why he plays along until he can determine who is actually calling, and the calls complained of herein followed this pattern exactly.

27. Mr. Sapan quickly determined that Lifewatch USA is a common and consistently used trade name of Defendant LifeWatch, Inc., and the website "www.lifewatch-usa.com" is registered with InterNIC with Defendant as the responsible organization and Mr. Evan Sirlin, the company President as the responsible administrator.

28. There are a number of complaints online about illegal telemarketing from Defendant tending to indicate a pattern consistent with the calls herein. (See,

e.g., http://consumersunion.org/campaign-updates/lifewatch-busted-for-robocalls-again/; https://www.acadiantotalsecurity.com/consumer-alert-beware-of-personal-medical-alert-system-telephone-scam/).

29. And there are a number of legal complaints filed against LifeWatch for their illegal calling and deceptive practices, not the least of which is a suit brought by the Federal Trade Commission which is currently pending in the Northern District of Illinois. (*FTC v. LifeWatch, Inc., et. al*., ND Ill. Case No. 15-cv-5781).

## Actual Harm & Willful and Knowing Conduct

30. Mr. Sapan is angered and annoyed by these junk calls and has been harmed by the waste of his time during the calls themselves, the waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and intrusion on his privacy of having to listen to the insistent metallic jangling of a phone ringing in his home whether he answered a particular call or not.

31. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 3% of his monthly phone bill in July 2014 since Defendant's calls constituted 3% or more of the total calls to his phone during the height of their junk calling campaign.

32. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services and that Defendant made no effort to check with or comply with the National Do Not Call Registry.

33. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations

### FIRST CAUSE OF ACTION
[TCPA Violation – Do Not Call List – For All 8 Calls]

34. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

35. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

36. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

37. At all times relevant to this complaint, Plaintiff had registered his

residential telephone number on the national do-not-call registry maintained by the U.S. Government.

38. Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

39. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

**SECOND CAUSE OF ACTION**
[Trespass to Chattel – For All 8 Calls]

40. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

41. The conduct by defendants complained of herein, namely illegally calling Plaintiff's phone, constitutes an electronic trespass to chattel.

42. At no time did Plaintiff consent to this trespass.

43. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 3% of his monthly phone bill in July 2014 since Defendant's calls constituted 3% or more of the total calls to his phone during the height of their junk calling campaign.

44. In making the illegal calls described above, defendants were guilty of oppression and malice, in that defendants made said calls with the intent to vex, injure, or annoy Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff therefore seeks an award of punitive damages.

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:
1. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c) (2);
2. For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:
3. For compensatory damages according to proof;
4. For punitive damages;

On ALL CAUSES OF ACTION:

5. For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.
6. For costs of suit herein incurred; and
7. For such further relief as the Court deems proper.

DATED: May 1, 2018						**PRATO & REICHMAN, APC**

							/s/Christopher J. Reichman, Esq.
							By: Christopher J. Reichman, Esq.
							**Prato & Reichman, APC**
							Attorneys for Plaintiff
							PAUL SAPAN